Daniel Cooper (State Bar No. 153576)
Drevet Hunt (State Bar No. 240487)
LAWYERS FOR CLEAN WATER, INC.
1004 A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155
e-mail: cleanwater@sfo.com, drev@lawyersforcleanwater.com

Christopher Sproul (State Bar No. 126398)
ENVIRONMENTAL ADVOCATES
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 561-2223(415) 358-5695
e-mail: csproul@enviroadvocates.com

Counsel for Plaintiff
KLAMATH RIVERKEEPER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KLAMATH RIVERKEEPER, a project of the Klamath Forest Alliance, a non-profit public benefit corporation organized under the laws of the State of California,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, STEPHEN L. JOHNSON, as Administrator of the United States Environmental Protection Agency, and WAYNE NASTRI, as Regional Administrator of the United States Environmental Protection Agency, Region 9,<br><br>    Defendants. | Case No. 4:07-cv-03908-SBA<br><br>**JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT; [PROPOSED] CASE MANAGEMENT ORDER**<br><br>Fed. R. Civ. P. 16 and 26<br>Civil L.R. 16-9<br><br>Judge: Honorable Sandra B. Armstrong<br>Date:   November 7, 2007<br>Time:   3:15 p.m.<br>Place:  Telephonic Conference |

Plaintiff Klamath Riverkeeper and Defendants United States Environmental Protection Agency, Stephen Johnson, and Wayne Nastri ("Defendants" or "EPA" or "Agency") hereby file the Joint Case Management Statement pursuant to Civil Local Rule 16-9 and in conformance with the Standing Order for All Judges of the Northern District of California, Contents of Joint Case Management Statement.

### 1. Jurisdiction and Service

This court has federal subject matter jurisdiction over Plaintiff's claims under section 702 of the Administrative Procedure Act, 5 U.S.C. § 702 and 28 U.S.C. § 1331. Klamath Riverkeeper alleges that EPA's approval of the State of California's list of water quality limited segments without including the pollutants *Microcystis aeruginosa* and microcystin toxin as the source of impairment of certain reaches of the Klamath River (including the Iron Gate and Copco Reservoirs) was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law – specifically the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA").

There are no unresolved issues regarding personal jurisdiction or venue and no additional parties to be served.

### 2. Facts

#### A. Statutory and Regulatory Background

Section 303(d) of the CWA and EPA's implementing regulations require each state to identify and list those waters within its jurisdiction for which technology-based effluent limitations and other required controls are not stringent enough to achieve applicable water quality standards. 33 U.S.C. § 1313(d)(1)(A); 40 C.F.R. § 130.7(b)(1). The list must include a priority ranking, taking into account the severity of the pollution and the uses to be made of such waters and "shall identify the pollutants causing or expected to cause violations of the applicable water quality standards." 40 C.F.R. § 130.7(b)(4); 33 U.S.C. § 1313(d)(1)(A). This ranked list of impaired waters is commonly known as the "303(d) List." The state is also required to establish the "total maximum daily load," or "TMDL," of pollutants that each listed water body can receive without violating applicable water quality standards *Id.* § 1313(d)(1)(C); 40 C.F.R. § 130.7(c)(1). The state must then submit its 303(d) List and TMDLs to EPA for approval. 33 U.S.C. § 1313(d)(2). If EPA disapproves the 303(d) List or TMDLs, EPA must identify those water bodies and TMDLs that it "determines necessary to implement

[applicable] water quality standards." 33 U.S.C. § 1313(d)(2); 40 C.F.R. § 130.7(d)(2). After issuing public notice and making any revisions it deems appropriate, EPA transmits this final 303(d) List and TMDLS to the state for incorporation into the state's water quality management plans. 40 C.F.R. § 130.7(d)(2).

**B. Plaintiff's Statement of Facts**

In November 2006, the California State Water Resources Control Board ("State Board") submitted the 2004-2006 iteration of the California 303(d) List ("the 2006 303(d) List") to EPA Region 9 for approval pursuant to CWA section 303(d)(1)(A), 33 U.S.C. § 1313(d)(1)(A). In a letter to the State Board dated November 30, 2006 ("November 2006 Letter"), the EPA partially approved the State's inclusion of all waters and pollutants identified in the State's 2006 303(d) List.

Prior to the State's submission of the 2006 303(d) List to EPA, Plaintiff provided information regarding the presence of *Microcystis aeruginosa* and microcystin toxin in the Klamath River and Iron Gate and Copco Reservoirs to the Regional Water Quality Control Board for the North Coast Region ("Regional Board") during the public comment period associated with preparation of the 2006 303(d) List. Specifically, Plaintiff provided written comments and oral testimony during the administrative process leading up to the Regional Board's adoption of the 2006 303(d) List. Klamath Riverkeeper commented to the Regional Board that the Klamath River and Iron Gate and Copco Reservoirs should be listed and that *Microcystis aeruginosa* and microcystin toxin should be identified as pollutants causing the failure of these waters to meet applicable WQS.

In a letter to the State Board dated March 8, 2007 ("March 2007 Letter"), the EPA partially disapproved the 2006 303(d) List due to omission of several water bodies and associated pollutants that failed to meet federal listing requirements. Klamath Riverkeeper wrote a comment letter to EPA on April 13, 2007 ("April 2007 Letter") concerning EPA approval of the 2006 303(d) List. Klamath Riverkeeper presented EPA with evidence that the Klamath River and the Iron Gate and Copco Dam Reservoirs are failing to attain applicable WQS set forth in the Regional Board's Water Quality Control Plan for the North Coast Region ("the Basin Plan") due to the presence of *Microcystis aeruginosa* and microcystin toxin in the water. Specifically, the April 2007 Letter explained that the presence of *Microcystis aeruginosa* and microcystin toxin in the Klamath River and the Iron Gate and Copco Dam

1  Reservoirs cause these water bodies not to meet WQS for toxicity, color, floating material, suspended
2  material biostimulatory substances, and odors.  The provided information further demonstrated that the
3  presence of *Microcystis aeruginosa* and microcystin toxin in the Klamath River and the Iron Gate and
4  Copco Reservoirs cause these water bodies to fail to meet designated beneficial uses including Native
5  American cultural use, water contact recreation, non-contact water recreation, commercial and
6  sportfishing, subsistence fishing, warm freshwater habitat, cold freshwater habitat, wildlife habitat,
7  habitat for rare, threatened, or endangered species; migration of aquatic organisms, and spawning,
8  reproduction, or early development.  Klamath Riverkeeper stated that based on this evidence, EPA was
9  obligated to amend the 2006 303(d) List to specify *Microcystis aeruginosa* and microcystin toxin
10 among the "pollutants" that are causing these waters not to meet the WQS.

11       In a letter dated June 28, 2007 ("June 2007 Letter") to the State Board, the EPA finalized the
12 list of waters and pollutants it added to California's 303(d) List.  The list did not identify the Klamath
13 River and the Iron Gate and Copco Dam Reservoirs as impaired due to the contamination of these
14 water bodies by elevated levels of *Microcystis aeruginosa* and microcystin toxin.  EPA failed to
15 include *Microcystis aeruginosa* and microcystin toxin as the source of impairment despite its
16 recognition that the presence of *Microcystis aeruginosa* and microcystin toxin in the Klamath River
17 and the Iron Gate and Copco Reservoirs poses adverse public health and environmental risks.  EPA did
18 not explain why or how the *Microcystis aeruginosa* and microcystin toxin are not among the pollutants
19 that cause the Klamath River and the Iron Gate and Copco Reservoirs to fail to meet applicable WQS.
20 Nonetheless, EPA stated that "EPA's approval of California's determination not to add to its list of
21 pollutants impairing the Klamath River, and the Iron Gate and Copco Reservoirs, should not be
22 construed as a suggestion by EPA that the public health and environmental impacts associated with
23 blue green algae or *Microsystis aeruginosa* in the Klamath River are trivial or need not be addressed."

24       Based on the above series of events, Klamath Riverkeeper initiated this action alleging that the
25 EPA's decision not to include *Microcystis aeruginosa* and microcystin toxin as pollutants causing the
26 impairment of certain reaches of the Klamath River was arbitrary, capricious, an abuse of discretion, or
27 otherwise not in accordance with EPA's CWA obligations.
28 //

**C. Defendants' Statement of Facts**

On November 24, 2006, the California State Water Resources Control Board submitted to EPA Region 9 for approval the California 2006 303(d) List.[1] On November 30, 2006, EPA approved the State's inclusion of water bodies and pollutants identified in the 2006 303(d) List with one exception not relevant here. On March 8, 2007, EPA disapproved the State's decision not to include certain additional water bodies and associated pollutants in the 2006 303(d) List. On March 15, 2007, EPA published a notice of availability in the Federal Register providing the public an opportunity to comment on EPA's March 8, 2007 decision. EPA received and reviewed Plaintiff's comment, which requested that EPA include in the 2006 303(d) List the Klamath River and the Copco and Iron Gate Dam reservoirs as impaired due to *Microcystis aeruginosa* ("blue green algae") and microcystin toxin.

On June 28, 2007, EPA transmitted to the State its final list of water bodies and associated pollutants that EPA added to the 2006 303(d) List, which did not include the Klamath River and the Copco and Iron Gate Dam reservoirs as impaired due to blue green algae or microcystin toxin. In its June 28, 2007 decision, EPA recognized the public health and environmental impacts associated with blue green algae and its associated toxins. EPA also explained that its November 30, 2006 approval decision included the State's listing of the Klamath River and the Copco and Iron Gate Dam reservoirs as impaired due to several pollutants (nutrients, organic enrichment/low dissolved oxygen, and temperature). EPA further explained that it believes that those pollutants contribute to the development of toxins associated with blue green algae in the Klamath River and its tributaries, and that the TMDLs developed for those pollutants will be sufficient to address the impacts of the algae. EPA explained that it believes that listing additional water body pollutant combinations at that time likely would not result in the development of TMDLS that would be any more effective at reducing the loadings of pollutants like nutrients, organic enrichment, and temperature that EPA believes contribute to the presence of blue green algae and its toxins in the Klamath River.

EPA also clarified that it was not taking a position as to whether blue green algae may be considered a "pollutant" or whether there may be applicable water quality standards related to the

---

[1] Documents in the administrative record refer to California's November 24, 2006 submission variously as, e.g., the "2006 section 303(d) list" and the "2004-2006 Section 303(d) List."

presence of blue green algae. Rather, EPA concluded that EPA regulations and guidance do not expressly address the question of whether a State is required to list certain waters for blue green algae when other water body pollutant combinations addressing the conditions that contribute to the algae's growth likely will address the concerns posed by blue green algae. Accordingly, EPA determined that section 303(d) of the CWA and its implementing regulations do not require the addition of blue green algae or microcystin toxin for the Klamath River and the Copco and Iron Gate Dam reservoirs to the State's 2006 303(d) List or preclude EPA's approval of that list.

    **D. Principal Factual Issues in Dispute**

    There are no key factual issues in dispute.

**3. Legal Issues**

    The primary legal issue in dispute is whether section 303(d) of the CWA and its implementing regulations require EPA to list the Klamath River and the Iron Gate and Copco Dam reservoirs as impaired due to blue green algae and microcystin toxin.

**4. Motions**

    There are no prior or pending motions. The Parties believe that this administrative record review case is governed by Civil Local Rule 16-5. Absent unforeseen issues raised by the filing of Defendants' Answer and certified index to the administrative record (e.g., the record is incomplete, necessitating a motion to supplement the record) or by any amendment Plaintiff may make to the pleadings, a motion for summary judgment and opposition to and counter-motion for summary judgment will be brought pursuant to the schedule outlined below in Section 17.

**5. Amendment of Pleadings**

    At present, there are no parties, claims, or defenses expected to be added or dismissed.

**6. Evidence Preservation**

    Plaintiff challenges EPA's decision not to list the Klamath River and the Iron Gate and Copco Dam reservoirs as impaired due to blue green algae and microcystin toxin and asserts review under section 706 of the APA. Therefore, in EPA's view, the merits of this case should be decided on the basis of the administrative record documenting the information before the agency at the time of EPA's decision. *See* 5 U.S.C. § 706; *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420

(1971). In most circumstances, there is no duty to preserve evidence outside the administrative record in a record review case because such evidence is not subject to discovery. For this reason, the Federal Rules of Civil Procedure exempt record review cases from many discovery requirements, including the obligation to confer on "any issues relating to preserving discoverable information . . . ." Fed. R. Civ. P. 26(a)(1)(E) (exempting record review cases from initial disclosures); 26(f) (requiring the parties to confer on a plan for discovery "[e]xcept in categories of proceedings exempted from initial disclosure under Rule 26(a)(1)(E) . . . ."). Because this case should be decided on the administrative record and Rule 26 exempts record review cases from discovery requirements, EPA believes that the evidence preservation requirements do not apply to the Agency in this case.

Plaintiff does not necessarily agree with EPA's legal assertions concerning the Agency's duty to preserve evidence. If EPA fails to produce a complete administrative record, then discovery might be appropriate to secure a complete administrative record. EPA should preserve any documents that should be included in such a record. Plaintiff does not, however, think Court intervention on matters of evidence preservation will be needed, as the parties appear likely to agree what constitutes a complete administrative record in this matter.

**7. Disclosures**

This is an action for review on an administrative record and thus exempt from the disclosure requirements pursuant to Fed. R. Civ. P. 26(a)(1)(E)(i).

**8. Discovery**

Pursuant to Local Rule 16-5, EPA will file the Answer and certified index to the administrative record of the decision challenged in this case by November 5, 2007. The Parties agree that this case constitutes an action for review on the administrative record and that discovery is permitted only in exceptional circumstances. *See Southwest Ctr. for Biological Diversity v. United States Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996). Accordingly, and as outlined below in Section 17, if, after EPA serves the certified index to the administrative record and Plaintiff believes that such exceptional circumstances exist, the Parties will inform the Court and request appropriate modifications to the schedule to accommodate any discovery motions.

//

**9. Class Actions**

This case is not a class action.

**10. Related Cases**

There are no related cases or proceedings pending before another judge of this court, or before another court or administrative body.

**11. Relief**

  **A. Plaintiff's Position**

One, the Court should issue an injunction pursuant to 5 U.S.C. §§ 706(1) and (2) ordering Defendants to set aside their approval of the 2006 303(d) List.

Two, the Court should issue a declaratory judgment establishing that EPA must amend the 2006 303(d) List to include the Klamath River and the Iron Gate and Copco Reservoirs as failing to attain applicable water quality standards set forth in the Basin Plan due to the contamination of these waters with elevated levels of the pollutants *Microcystis aeruginosa* and microcystin toxin.

Three, the Court should award Plaintiff its costs of suit and attorneys fees pursuant to the APA, 5 U.S.C. § 504.

  **B. Defendants' Position**

If the Court finds that EPA's challenged decision in this case was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, the proper and only available remedy for Plaintiff is for the Court to remand the decision to EPA for further proceedings consistent with the Court's opinion. Indeed, the APA itself provides that a court shall "set aside" – not correct – agency action that it finds to have been "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2); *Abramowitz v. EPA*, 832 F.2d 1071, 1078 (9th Cir.1987) ("The general rule is that when an administrative agency has abused its discretion or exceeded its statutory authority, a court should remand the matter to the agency for further consideration.").

**12. Settlement and ADR**

The parties have discussed settlement in an effort to informally resolve the case. All parties have filed and served an ADR Certification and provided a copy to the ADR Unit as required by ADR Local Rule 3-5(b). The Parties also met and conferred pursuant to ADR Local Rule 3-5(a) to discuss

an appropriate ADR Process but, as outlined below, do not agree on whether this case will benefit from any ADR process.

### A. Plaintiff's Position

Plaintiff sees no intermediate compromise between EPA listing or not listing the Klamath River and the Iron Gate and Copco Reservoirs as waters not meeting applicable WQS due to the presence of the pollutants *Microcystis aeruginosa* and microcystin toxin.  Defendants note below that the State of California is now preparing its biennial update to the 303(d) list as required by the Clean Water Act.  Defendants contend that staff members of the California Regional Water Quality Control Board will "likely" recommend adding to the 303(d) list that portions of the Klamath River are impaired by microsystin toxin.  Defendants apparently urge that, on this basis, Plaintiff should accept as a settlement compromise that Plaintiff not pursue this case until the State completes its 2008 biennial update of the 303(d) list.  In Plaintiff's view, this instead merely underscores the merits of proceeding with the case.  That Regional Board staff are contemplating now recommending adding microsystin toxin to the 303(d) list corroborates that the State and EPA failed to adhere to CWA dictates in omitting the toxin from the 2006 303(d) list.  Furthermore, it is unreasonable to expect Plaintiff to await the outcome of an uncertain administrative process to have this error corrected.  The State and EPA have routinely missed deadlines for completing action on the 303(d) List in the past, giving Plaintiff good reason to be concerned that action on the 2008 303(d) list could be substantially delayed.  Additionally, a "likely" staff recommendation to the Regional Board is far from certain indication of the outcome of the listing decision to be made by the Regional Board members, the California State Water Resources Control Board, and then EPA (all of which must approve the 303(d) list before it becomes final under the CWA).  Plaintiff views the presence of microsystin toxin and *Microcystis aeruginosa* in the Klamath River as a daily and urgent impairment to human health, the environment and cultural and religious practices of Native Americans—and the failure of the State and EPA to recognize this impairment as required by the CWA as an error of law that should be promptly addressed via this court action.  Given the urgency of addressing the State and EPA's errors and Plaintiff's belief that further settlement discussions along the lines urged by EPA will be fruitless, Plaintiff strongly opposes delaying summary judgment until after additional settlement discussions are held.  EPA should not be allowed to stall judicial resolution of its duty to complete its long overdue

Clean Water Act mandate to adopt a legally adequate 303(d) List.

If Plaintiff prevails on the merits, Plaintiff believes the parties may benefit from ADR to facilitate resolution of Plaintiff's recovery of attorney's fees and costs. Accordingly, Plaintiff requests to be presently excused from ADR process requirements, with the matter of ADR revisited if Plaintiff prevails on the merits.

### B. Defendants' Position

EPA believes that settlement is an appropriate option in this case. According to staff members at the California North Coast Regional Water Quality Control Board, they likely will be recommending to the Regional Board that it include in its forthcoming proposed 2008 303(d) List portions of the Klamath River (both Copco and Iron Gate Dam reservoirs and waters in between) as impaired due to microcystin toxin. The Regional Board's proposed 2008 303(d) List is expected to be noticed for public comment sometime in early Spring 2008. EPA therefore believes that the State should have an opportunity to resolve this listing issue through its 2008 303(d) listing process before embroiling the Court and the parties with the burdens of litigation. EPA does not, however, view the Regional Board staff's likely recommendation regarding the listing of microcystin toxin as having any bearing on the merits of Plaintiff's allegations against the Agency in this case. And while EPA discussed several settlement options with Plaintiff during the Rule 26(f) meet and confer, including the option of holding the case in abeyance until the Regional Board issues its proposed 2008 303(d) List, as of the date of this filing, the parties have not been able to develop or discuss the specific terms or merits of these or any other potential settlement options. At the very least, and consistent with this Court's view on the potential benefits of ADR and settlement, EPA would like an opportunity to engage in some type of settlement discussions with Plaintiff before proceeding with summary judgment briefing.

**13. Consent to Magistrate Judge For All Purposes**

The parties do not consent to have a Magistrate Judge conduct all further proceedings including trial and entry of judgment.

**14. Other References**

This case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

//

**15. Narrowing of Issues**

This case involves narrow legal issues and the Parties are currently unaware of any disputed facts.

**16. Expedited Schedule**

The proposed schedule in section 17 below expedites the case to the extent feasible.

**17. Case Management and Scheduling**

The Parties believe that a slight deviation from the schedule provided in Civil L.R. 16-5 is warranted to ensure the Parties have sufficient time to review and resolve any administrative record issues and to provide EPA with enough time over the upcoming holiday season to address the merits of Plaintiff's motion for summary judgment. Accordingly, the Parties jointly propose the following schedule:

| Event: | Deadline or Date: |
|---|---|
| Last Day to File Request for a Modification to Case Schedule | Within 10 days after service of Answer and certified index to the Administrative Record |
| Plaintiff Files Its Motion for Summary Judgment | Within 30 days after service of Answer and certified index to the Administrative Record |
| Defendants File Their Opposition and Counter-Motion | Within 45 days after service of Plaintiff's Motion for Summary Judgment |
| Plaintiff Files Its Reply to Defendants' Opposition and Counter Motion | Within 14 days after service of Defendants' Opposition and Counter Motion |
| Hearing on Motion(s): | February 15, 2008 |

The parties also propose that adjudication of Plaintiff's request of its reasonable costs and fees await resolution of the motion for summary judgment.

**18. Trial**

The Parties agree that a trial is not necessary in this administrative record review case and that the legal issues can be resolved on summary judgment.

//
//
//
//
//
//

**19. Disclosure of Non-party Interested Entities or Persons**

The parties have filed their respective "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16. There are no other entities known by Plaintiff to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

**Dated:** October 31, 2007                  /s/
Christopher Sproul
Attorney for Plaintiff
KLAMATH RIVERKEEPER

**Dated:** October 31, 2007                  /s/ Rochelle L. Russell
ROCHELLE L. RUSSELL
Attorney for Defendants
UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, STEPHEN
JOHNSON, and WAYNE NASTRI

I, Drevet Hunt, attest that the content of this document is acceptable to all persons required to sign this document.

Date: October 31, 2007                  /s/
Drevet Hunt
Lawyers for Clean Water, Inc.
Attorney for Plaintiff

**[PROPOSED] ORDER**

The Court adopts the following as the Case Management Order for the case.

| | |
|---|---|
| Last Day to File Request for a Modification to Case Schedule | Within 10 days after service of Answer and certified index to the Administrative Record |
| Plaintiff Files Its Motion for Summary Judgment | Within 30 days after service of Answer and certified index to the Administrative Record |
| Defendants File Their Opposition and Counter-Motion | Within 45 days after service of Plaintiff's Motion for Summary Judgment |
| Plaintiff Files Its Reply to Defendants' Opposition and Counter Motion | Within 14 days after service of Defendants' Opposition and Counter Motion |
| Hearing on Motion(s): | February 26, 2008 |

IT IS SO ORDERED.

Dated: _____    _____

SANDRA BROWN ARMSTONG
UNITED STATES DISTRICT JUDGE