1   Daniel Cooper (State Bar No. 153576)
    Drevet Hunt (State Bar No. 240487)
2   LAWYERS FOR CLEAN WATER, INC.
    1004 A O'Reilly Avenue
3   San Francisco, California 94129
    Telephone: (415) 440-6520
4   Facsimile: (415) 440-4155
    e-mail: cleanwater@sfo.com, drev@lawyersforcleanwater.com
5

6   Christopher Sproul (State Bar No. 126398)
    ENVIRONMENTAL ADVOCATES
7   5135 Anza Street
    San Francisco, California 94121
8   Telephone:  (415) 533-3376
    Facsimile:  (415) 561-2223(415) 358-5695
9   e-mail: csproul@enviroadvocates.com

10  Counsel for Plaintiff
11  KLAMATH RIVERKEEPER

12                      UNITED STATES DISTRICT COURT

13                     NORTHERN DISTRICT OF CALIFORNIA

14

15

16  KLAMATH RIVERKEEPER, a project of the          Case No. 3:07-cv-03908-WHA
    Klamath Forest Alliance, a non-profit public
17  benefit corporation organized under the laws of  **JOINT CASE MANAGEMENT**
    the State of California,                          **STATEMENT AND RULE 26(f) REPORT;**
18                                                    **[PROPOSED] CASE MANAGEMENT**
            Plaintiff,                                **ORDER**
19
            v.                                        Fed. R. Civ. P. 16 and 26
20                                                    Civil L.R. 16-9
    UNITED STATES ENVIRONMENTAL
21  PROTECTION AGENCY, STEPHEN L.                     Judge: Honorable William H. Alsup
    JOHNSON, as Administrator of the United States   Date:   December 6, 2007
22  Environmental Protection Agency, and WAYNE        Time:  11:00 a.m.
    NASTRI, as Regional Administrator of the United  Place: Courtroom 9, 19th Floor
23  States Environmental Protection Agency, Region
    9,
24
            Defendants.
25

26

27

28

Plaintiff Klamath Riverkeeper and Defendants United States Environmental Protection Agency, Stephen Johnson, and Wayne Nastri ("Defendants" or "EPA" or "Agency") hereby file the Joint Case Management Statement pursuant to Civil Local Rule 16-9 and in conformance with the Standing Order for All Judges of the Northern District of California, Contents of Joint Case Management Statement.

**1. <u>Jurisdiction and Service</u>**

This court has federal subject matter jurisdiction over Plaintiff's claims under section 702 of the Administrative Procedure Act, 5 U.S.C. § 702 and 28 U.S.C. § 1331. Klamath Riverkeeper alleges that EPA's approval of the State of California's list of water quality limited segments without including the pollutants *Microcystis aeruginosa* and microcystin toxin as the source of impairment of certain reaches of the Klamath River (including the Iron Gate and Copco Reservoirs) was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law – specifically the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA").

There are no unresolved issues regarding personal jurisdiction or venue and no additional parties to be served.

**2. <u>Facts</u>**

**A. Statutory and Regulatory Background**

Section 303(d) of the CWA and EPA's implementing regulations require each state to identify and list those waters within its jurisdiction for which technology-based effluent limitations and other required controls are not stringent enough to achieve applicable water quality standards. 33 U.S.C. § 1313(d)(1)(A); 40 C.F.R. § 130.7(b)(1). The list must include a priority ranking, taking into account the severity of the pollution and the uses to be made of such waters and "shall identify the pollutants causing or expected to cause violations of the applicable water quality standards." 40 C.F.R. § 130.7(b)(4); 33 U.S.C. § 1313(d)(1)(A). This ranked list of impaired waters is commonly known as the "303(d) List." The state is also required to establish the "total maximum daily load," or "TMDL," of pollutants that each listed water body can receive without violating applicable water quality standards *Id.* § 1313(d)(1)(C); 40 C.F.R. § 130.7(c)(1). The state must then submit its 303(d) List and TMDLs to EPA for approval. 33 U.S.C. § 1313(d)(2). If EPA disapproves the 303(d) List or TMDLs, EPA must identify those water bodies and TMDLs that it "determines necessary to implement

1  [applicable] water quality standards." 33 U.S.C. § 1313(d)(2); 40 C.F.R. § 130.7(d)(2).  After issuing

2  public notice and making any revisions it deems appropriate, EPA transmits this final 303(d) List and

3  TMDLS to the state for incorporation into the state's water quality management plans.  40 C.F.R. §

4  130.7(d)(2).

5  **B. Plaintiff's Statement of Facts**

6  In November 2006, the California State Water Resources Control Board ("State Board")

7  submitted the 2004-2006 iteration of the California 303(d) List ("the 2006 303(d) List") to EPA Region

8  9 for approval pursuant to CWA section 303(d)(1)(A), 33 U.S.C. § 1313(d)(1)(A).  In a letter to the

9  State Board dated November 30, 2006 ("November 2006 Letter"), the EPA partially approved the

10  State's inclusion of all waters and pollutants identified in the State's 2006 303(d) List.

11  Prior to the State's submission of the 2006 303(d) List to EPA, Plaintiff provided information

12  regarding the presence of *Microcystis aeruginosa* and microcystin toxin in the Klamath River and Iron

13  Gate and Copco Reservoirs to the Regional Water Quality Control Board for the North Coast Region

14  ("Regional Board") during the public comment period associated with preparation of the 2006 303(d)

15  List.  Specifically, Plaintiff provided written comments and oral testimony during the administrative

16  process leading up to the Regional Board's adoption of the 2006 303(d) List.  Klamath Riverkeeper

17  commented to the Regional Board that the Klamath River and Iron Gate and Copco Reservoirs should

18  be listed and that *Microcystis aeruginosa* and microcystin toxin should be identified as pollutants

19  causing the failure of these waters to meet applicable WQS.

20  In a letter to the State Board dated March 8, 2007 ("March 2007 Letter"), the EPA partially

21  disapproved the 2006 303(d) List due to omission of several water bodies and associated pollutants that

22  failed to meet federal listing requirements.  Klamath Riverkeeper wrote a comment letter to EPA on

23  April 13, 2007 ("April 2007 Letter") concerning EPA approval of the 2006 303(d) List.  Klamath

24  Riverkeeper presented EPA with evidence that the Klamath River and the Iron Gate and Copco Dam

25  Reservoirs are failing to attain applicable WQS set forth in the Regional Board's Water Quality Control

26  Plan for the North Coast Region ("the Basin Plan") due to the presence of *Microcystis aeruginosa* and

27  microcystin toxin in the water.  Specifically, the April 2007 Letter explained that the presence of

28  *Microcystis aeruginosa* and microcystin toxin in the Klamath River and the Iron Gate and Copco Dam

1   Reservoirs cause these water bodies not to meet WQS for toxicity, color, floating material, suspended

2   material biostimulatory substances, and odors.  The provided information further demonstrated that the

3   presence of *Microcystis aeruginosa* and microcystin toxin in the Klamath River and the Iron Gate and

4   Copco Reservoirs cause these water bodies to fail to meet designated beneficial uses including Native

5   American cultural use, water contact recreation, non-contact water recreation, commercial and

6   sportfishing, subsistence fishing, warm freshwater habitat, cold freshwater habitat, wildlife habitat,

7   habitat for rare, threatened, or endangered species; migration of aquatic organisms, and spawning,

8   reproduction, or early development.  Klamath Riverkeeper stated that based on this evidence, EPA was

9   obligated to amend the 2006 303(d) List to specify *Microcystis aeruginosa* and microcystin toxin

10  among the "pollutants" that are causing these waters not to meet the WQS.

11         In a letter dated June 28, 2007 ("June 2007 Letter") to the State Board, the EPA finalized the

12  list of waters and pollutants it added to California's 303(d) List.  The list did not identify the Klamath

13  River and the Iron Gate and Copco Dam Reservoirs as impaired due to the contamination of these

14  water bodies by elevated levels of *Microcystis aeruginosa* and microcystin toxin.  EPA failed to

15  include *Microcystis aeruginosa* and microcystin toxin as the source of impairment despite its

16  recognition that the presence of *Microcystis aeruginosa* and microcystin toxin in the Klamath River

17  and the Iron Gate and Copco Reservoirs poses adverse public health and environmental risks.  EPA did

18  not explain why or how the *Microcystis aeruginosa* and microcystin toxin are not among the pollutants

19  that cause the Klamath River and the Iron Gate and Copco Reservoirs to fail to meet applicable WQS.

20  Nonetheless, EPA stated that "EPA's approval of California's determination not to add to its list of

21  pollutants impairing the Klamath River, and the Iron Gate and Copco Reservoirs, should not be

22  construed as a suggestion by EPA that the public health and environmental impacts associated with

23  blue green algae or *Microsystis aeruginosa* in the Klamath River are trivial or need not be addressed."

24         Based on the above series of events, Klamath Riverkeeper initiated this action alleging that the

25  EPA's decision not to include *Microcystis aeruginosa* and microcystin toxin as pollutants causing the

26  impairment of certain reaches of the Klamath River was arbitrary, capricious, an abuse of discretion, or

27  otherwise not in accordance with EPA's CWA obligations.

28  //

1

## C.  Defendants' Statement of Facts

2        On November 24, 2006, the California State Water Resources Control Board submitted to EPA

3   Region 9 for approval the California 2006 303(d) List. [1]  On November 30, 2006, EPA approved the

4   State's inclusion of water bodies and pollutants identified in the 2006 303(d) List with one exception

5   not relevant here.  On March 8, 2007, EPA disapproved the State's decision not to include certain

6   additional water bodies and associated pollutants in the 2006 303(d) List.  On March 15, 2007, EPA

7   published a notice of availability in the Federal Register providing the public an opportunity to

8   comment on EPA's March 8, 2007 decision.  EPA received and reviewed Plaintiff's comment, which

9   requested that EPA include in the 2006 303(d) List the Klamath River and the Copco and Iron Gate

10  Dam reservoirs as impaired due to *Microcystis aeruginosa* ("blue green algae") and microcystin toxin.

11       On June 28, 2007, EPA transmitted to the State its final list of water bodies and associated

12  pollutants that EPA added to the 2006 303(d) List, which did not include the Klamath River and the

13  Copco and Iron Gate Dam reservoirs as impaired due to blue green algae or microcystin toxin.  In its

14  June 28, 2007 decision, EPA recognized the public health and environmental impacts associated with

15  blue green algae and its associated toxins.  EPA also explained that its November 30, 2006 approval

16  decision included the State's listing of the Klamath River and the Copco and Iron Gate Dam reservoirs

17  as impaired due to several pollutants (nutrients, organic enrichment/low dissolved oxygen, and

18  temperature).  EPA further explained that it believes that those pollutants contribute to the development

19  of toxins associated with blue green algae in the Klamath River and its tributaries, and that the TMDLs

20  developed for those pollutants will be sufficient to address the impacts of the algae.  EPA explained

21  that it believes that listing additional water body pollutant combinations at that time likely would not

22  result in the development of TMDLS that would be any more effective at reducing the loadings of

23  pollutants like nutrients, organic enrichment, and temperature that EPA believes contribute to the

24  presence of blue green algae and its toxins in the Klamath River.

25       EPA also clarified that it was not taking a position as to whether blue green algae may be

26  considered a "pollutant" or whether there may be applicable water quality standards related to the

27

28  [1]  Documents in the administrative record refer to California's November 24, 2006 submission
     variously as, e.g., the "2006 section 303(d) list" and the "2004-2006 Section 303(d) List."

presence of blue green algae.  Rather, EPA concluded that EPA regulations and guidance do not expressly address the question of whether a State is required to list certain waters for blue green algae when other water body pollutant combinations addressing the conditions that contribute to the algae's growth likely will address the concerns posed by blue green algae.  Accordingly, EPA determined that section 303(d) of the CWA and its implementing regulations do not require the addition of blue green algae or microcystin toxin for the Klamath River and the Copco and Iron Gate Dam reservoirs to the State's 2006 303(d) List or preclude EPA's approval of that list.

**D.  Principal Factual Issues in Dispute**

There are no key factual issues in dispute.

**3.  Legal Issues**

The primary legal issue in dispute is whether section 303(d) of the CWA and its implementing regulations require EPA to list the Klamath River and the Iron Gate and Copco Dam reservoirs as impaired due to blue green algae and microcystin toxin.

**4.  Motions**

There are no prior or pending motions.  The Parties believe that this administrative record review case is governed by Civil Local Rule 16-5.  Defendants have filed their Answer and certified index to the administrative record.  Plaintiff will file a motion for summary judgment by December 19, 2007.  Defendants intend to file an opposition thereto and counter-motion for summary judgment.

**5.  Amendment of Pleadings**

At present, there are no parties, claims, or defenses expected to be added or dismissed.

**6.  Evidence Preservation**

The Parties do not believe that evidence preservation is an issue in this case since it is an action for review on an administrative record, the record has been produced, and Plaintiff does not plan to seek to supplement the record, thus there is no evidence to be preserved.

**7.  Disclosures**

This is an action for review on an administrative record and thus exempt from the disclosure requirements pursuant to Fed. R. Civ. P. 26(a)(1)(E)(i).

//

**8.  Discovery**

The Parties agree that this case constitutes an action for review on the administrative record and that discovery is permitted only in exceptional circumstances.  *See Southwest Ctr. for Biological Diversity  v. United States Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996).  Pursuant to Local Rule 16-5, EPA filed the certified index to the administrative record of the decision challenged in this case on November 5, 2007, and provided an electronic copy of the full administrative record to Plaintiff.  Plaintiff has reviewed the administrative record and does not plan to seek to supplement it through discovery motions.

**9.  Class Actions**

This case is not a class action.

**10. Related Cases**

This case is related to *McConnell, et al. v. Pacificorp, Inc.*, Case No. CV 07-02382 WHA, currently pending before this Court.

**11. Relief**

  **A.  Plaintiff's Position**

One, the Court should issue an injunction pursuant to 5 U.S.C. §§ 706(1) and (2) ordering Defendants to set aside their approval of the 2006 303(d) List.

Two, the Court should issue a declaratory judgment establishing that EPA must amend the 2006 303(d) List to include the Klamath River and the Iron Gate and Copco Reservoirs as failing to attain applicable water quality standards set forth in the Basin Plan due to the contamination of these waters with elevated levels of the pollutants *Microcystis aeruginosa* and microcystin toxin.

Three, the Court should award Plaintiff its costs of suit and attorneys fees pursuant to the APA, 5 U.S.C. § 504.

  **B.  Defendants' Position**

If the Court finds that EPA's challenged decision in this case was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, the proper and only available remedy for Plaintiff is for the Court to remand the decision to EPA for further proceedings consistent with the Court's opinion.  Indeed, the APA itself provides that a court shall "set aside" – not correct – agency

action that it finds to have been "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2); *Abramowitz v. EPA*, 832 F.2d 1071, 1078 (9th Cir.1987) ("The general rule is that when an administrative agency has abused its discretion or exceeded its statutory authority, a court should remand the matter to the agency for further consideration.").

## 12. Settlement and ADR

The parties have discussed settlement in an effort to informally resolve the case.  All parties have filed and served an ADR Certification and provided a copy to the ADR Unit as required by ADR Local Rule 3-5(b).  The Parties also met and conferred pursuant to ADR Local Rule 3-5(a) to discuss an appropriate ADR Process.  The Parties further met with a mediator appointed according to the ADR Local Rules to discuss whether mediation would be appropriate in this case.  At the conclusion of this process, the mediator indicated to the parties that he would recommend to the Court that this case would not benefit from any ADR process at this time.

If Plaintiff prevails on the merits, Plaintiff believes the parties may benefit from ADR in the future to facilitate resolution of Plaintiff's recovery of attorney's fees and costs and possibly to work out a schedule for implementation of the remedy.  For now, however, the parties agree that further mediation would not be productive in this case and therefore request to be presently excused from the Court's ADR process requirements.

## 13. Consent to Magistrate Judge For All Purposes

The parties do not consent to have a Magistrate Judge conduct all further proceedings including trial and entry of judgment.

## 14. Other References

This case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## 15. Narrowing of Issues

This case involves narrow legal issues and the Parties are currently unaware of any disputed facts.

## 16. Expedited Schedule

The proposed schedule in section 17 below expedites the case to the extent feasible.

*//*

**17. Case Management and Scheduling**

    **A. Plaintiff's Position**

Consistent with this Court's limited extension of the schedule for filing a motion for summary judgment set by Civil L.R. 16-5 granted on November 28, 2007, Plaintiff will file its motion for summary judgment on or before December 19, 2007. The Parties have previously agreed that Defendants should be granted 45 days, rather than the 30 days allowed by Civil L.R. 16-5, to oppose Plaintiff's motion for summary judgment and file any counter-motion. As such, Plaintiff proposes the following briefing schedule:

- Plaintiff's motion for summary judgment shall be filed on or before December 19, 2007.
- Defendants shall file their opposition to Plaintiff's motion for summary judgment and any counter-motion for summary judgment on or before February 4, 2007.
- Plaintiff shall file its reply on its motion for summary judgment and it opposition to any counter-motion for summary judgment on or before February 18, 2007.
- A hearing on this matter shall be held on March 6, 2007.

Defendants propose that they be granted a reply brief, which is an additional variation from the briefing structure established by Civil L.R. 16-5. Plaintiff opposes this request because it believes there is no reason to deviate from the structure set by the Local Rule. In addition, Plaintiff notes that the Defendants' previously agreed to the briefing structure established by Civil L.R. 16-5 in a Case Management Statement submitted to Judge Armstrong before this case was transferred to this Court. If the Court grants a reply brief to Defendants, Plaintiff requests that the Court establish the following schedule:

- Plaintiff's motion for summary judgment shall be filed on or before December 18, 2007.
- Defendants shall file their opposition to Plaintiff's motion for summary judgment and any counter-motion for summary judgment on or before February 1, 2007.
- Plaintiff shall file its reply on its motion for summary judgment and it opposition to any counter-motion for summary judgment on or before February 15, 2007.
- Defendants shall file their reply on their cross-motion for summary judgment on or before February 22, 2007.

- A hearing on this matter shall be held on March 6, 2007.

**A.  Defendants' Position**

Local Rule 16-5 requires Plaintiff to file its motion for summary judgment within 30 days of receipt of an answer, allows EPA to file an opposition or counter-motion within 30 days of Plaintiff's motion for summary judgment, and gives Plaintiff the opportunity to file a reply within 14 days after service of EPA's opposition or counter-motion.  Local Rule 16-5 neither expressly provides for nor prohibits EPA from filing a reply in support of that counter-motion.  Local Rule 7-3(c), however, provides that a moving party may file a reply in further support of its motion.  EPA does not construe Local Rule 16-5 as abrogating the reply provided in Local Rule 7-3(c).  In this case, EPA will be filing a combined opposition and counter-motion for summary judgment.  And while EPA did not request a reply in the previous case management statement submitted to Judge Armstrong, EPA has since concluded that it will be filing an opposition *and* counter-motion and does not wish to burden the Court with a motion requesting leave to file a reply brief in support of that counter-motion.  Accordingly, EPA proposes the following briefing schedule, which accommodates a reply for both Plaintiff's motion and EPA's counter-motion – a schedule which is akin to the traditional briefing format typically used in cross-motions for summary judgment:

- Plaintiff shall file a motion for summary judgment on or before December 19, 2007.
- EPA shall file its combined opposition to Plaintiff's motion and counter-motion for summary judgment on or before February 4, 2008.
- Plaintiff shall file its reply and any opposition to EPA's counter-motion on or before February 18, 2008.
- EPA shall file a reply to Plaintiff's opposition on or before March 3, 2008.
- Hearing on Plaintiff's motion for summary judgment and any counter-motion filed by EPA shall be held on March 13, 2008.

**18. Trial**

The Parties agree that a trial is not necessary in this administrative record review case and that the legal issues can be resolved on summary judgment.

//

**19. Disclosure of Non-party Interested Entities or Persons**

The parties have filed their respective "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16.  There are no other entities known by Plaintiff to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

Dated:    November 29, 2007                          /s/
                                                            Christopher Sproul
                                                            Attorney for Plaintiff
                                                            KLAMATH RIVERKEEPER

Dated:    November 29, 2007               /s/ Rochelle L. Russell
                                                            ROCHELLE L. RUSSELL
                                                            Attorney for Defendants
                                                            UNITED STATES ENVIRONMENTAL
                                                            PROTECTION AGENCY, STEPHEN
                                                            JOHNSON, and WAYNE NASTRI

I, Drevet Hunt, attest that the content of this document is acceptable to all persons required to sign this document.

Date:  November 29, 2007                            /s/
                                                            Drevet Hunt
                                                            Lawyers for Clean Water, Inc.
                                                            Attorney for Plaintiff

**[PROPOSED] ORDER**

The Court adopts the following as the Case Management Order for the case:

- Plaintiff shall file a motion for summary judgment on or before December __, 2007.

- Defendants shall file their combined opposition to Plaintiff's motion and counter-motion for summary judgment on or before _____.

- Plaintiff shall file its reply and any opposition to Defendants' counter-motion on or before _____.

- Defendants shall file a reply to Plaintiff's opposition on or before _____.

- Hearing on Plaintiff's motion for summary judgment and any counter-motion filed by Defendants shall be held on _____.

IT IS SO ORDERED.

Dated: _____                    _____

                                          WILLIAM H. ALSUP
                                          UNITED STATES DISTRICT JUDGE